# In the United States Court of Federal Claims

No. 18-670C
(Filed: July 11, 2018)*
**\*Opinion Originally Filed Under Seal on June 22, 2018**

|  |  |  |
|---|---|---|
| OST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Bid Protest; Jurisdiction; Pre-award |
| | ) | Protest; Preliminary Injunction; Bad |
| v. | ) | Faith; Motion to Dismiss; Contract |
| | ) | Disputes Act; Motion to Supplement |
| THE UNITED STATES, | ) | the Administrative Record. |
| | ) | |
| Defendant. | ) | |
| | ) | |

*Thomas A. Coulter,* Richmond, VA, for plaintiff.  *Nicole Hardin Brakstad*, Richmond, VA, of counsel.

*Joshua Kurland,* Civil Division, United States Department of Justice, Washington, D.C., with whom were *Chad A. Readler*, Acting Assistant Attorney General, *Robert E. Kirshman, Jr.*, Director, and *Allison Kidd-Miller*, Assistant Director, for defendant. *Whitney Michak*, Attorney Advisor, Office of General Counsel, Defense Health Agency, Aurora, Colorado, of counsel.

**OPINION**

**FIRESTONE**, *Senior Judge*

Pending before the court is the May 10, 2018 motion filed by Optimal Solutions and Technologies, Inc. ("OST") for a preliminary injunction in connection with the Defense Health Agency's ("DHA") decision to (1) issue a solicitation for Information Technology ("IT") services as part DHA's E-Commerce Operational Systems Support ("EOSS") program and (2) to issue the solicitation using the General Service Administration's ("GSA") Alliant Government Wide Acquisition Contract ("Alliant

GWAC"). ECF No. 5. OST is the incumbent contractor currently providing the IT services to DHA under the EOSS program.

OST in its complaint and motion for preliminary relief asserts that DHA's decision to procure IT services rather than exercise an option available under OST's contract was made in bad faith and is thus irrational and contrary to law. In addition, OST asserts in its complaint and motion that DHA's decision to use the Alliant GWAC to procure IT services was made in bad faith with the sole purpose to prevent OST from competing for the new procurement because OST is not eligible to bid under the Alliant GWAC.

OST argues in its accompanying motion to supplement the administrative record that the problems OST has had in performing the current contract have led DHA to have animus toward OST.[1] ECF No. 21. This animus, OST argues, led DHA to make the above-noted procurement decisions for the express and sole purpose of harming OST. OST argues that this court should not allow DHA to award a contract under the pending solicitation until the court can consider the merits of OST's claims and contends that the

---

[1] In its June 4, 2018 motion to supplement the administrative record and to conduct discovery, OST has produced several documents and declarations. ECF No. 21. Specifically, OST seeks to supplement the administrative record with (1) documents and communications regarding the evaluation of OST's performance under the precursor contract (Compl. Ex. A-P, Pl.'s Mot. to Supp., Ex Q), (2) communications between DHA and OST regarding OST's performance (Compl. Ex. A-P, Pl.'s Mot. to Supp., Ex Q), (3) the Declaration of Bradley H. Stein, Vice President of OST (Pl.'s Mot to Supp, Ex. R), (4) discovery and testimony of Graham Innins, Kelly Theil, and Todd Young regarding the necessity and basis for the new procurement, (5) documents concerning the decision to use the Alliant GWAC, and (6) documents referenced in the administrative record but which have not been included. With regard to the last group of documents, the government has supplemented the record with one of the four groups of documents requested, the "summary of the plan" (referenced by AR 132). ECF No. 25.

equities and the public interest weigh in favor of enjoining DHA from awarding a new IT services contract.

The government argues, in response to OST's motion for preliminary relief and in its accompanying partial motion to dismiss, that any claim by OST regarding DHA's decision not to exercise an option may be heard only after OST complies with the procedures under the Contract Disputes Act ("CDA"), 41 U.S.C. § 7101 *et seq.*, and that DHA's decision not to exercise an option cannot be reviewed in the context of this court's bid protest jurisdiction. ECF No. 19. To the extent the court can consider whether DHA acted in bad faith in deciding to procure IT services rather than exercise an option under OST's contract, the government argues that OST is not likely to prevail on the merits because the administrative record does not support OST's allegations of bad faith and OST has not produced any evidence to show that the decisions to procure IT services or to use the Alliant GWAC were made in bad faith with animus toward OST. The government argues that OST has not produced any evidence of bad faith in its motion to supplement the administrative record. The government argues that the record and evidence produced by OST show that the decision to procure IT services was done because OST was doing a poor job and not because of any animus toward OST. Similarly, the government argues, DHA's decision to use the Alliant GWAC vehicle was not made in bad faith with the sole intent to harm OST. To the contrary, the government argues, the decision to use the Alliant GWAC vehicle was mandated by DHA policy.

With regard to the balance of the equities the government argues that the government's interest and the public interest overwhelmingly favor the government going

forward and awarding a new IT services contract due to their vital role in ensuring that military members and their dependents receive healthcare. OST argues that the equities weigh in its favor because if the court allows for an award of a contract, OST will lose its employees and ability to secure the four additional option years of contract work available under its current contract with the government. OST also argues that the government has other alternatives to ensuring the important IT services needed for DHA are provided through some other mechanism.

For the following reasons the government's partial motion to dismiss in part is **GRANTED.** OST's motion to supplement the administrative record is **DENIED.** Additionally, OST's motion for a preliminary injunction is **DENIED.**

## I.   **Factual Background**

A.  DHA's E-Commerce System

TRICARE is the healthcare program of the United States Department of Defense ("DoD") which serves active duty and retired military personnel as well as their dependents. AR 503. DHA is responsible for the management and operation of the TIRCARE program to ensure that military health and private sector care services provide service to the beneficiaries. *Id.* As part of the TRICARE program, beneficiaries are able to obtain authorized care from civilian providers through Managed Care Support Contracts ("MCSCs") for which they are reimbursed. *Id.*

In order to support this function, DHA has implemented the DHA E-Commerce System ("ECS"), which provides an interface that supports MCSC payments and other connected business management needs. *Id.* The E-Commerce Operational Systems

Support ("EOSS"), the program at issue in this bid protest, provides the technical support

staff for the ECS, including IT services to maintain, operate, and provide engineering and

technical support for the ECS.  *Id.*  "DHA ECS applications support critical and time-

sensitive financial and contract management operations" and allow DHA to process

almost 200 million claims annually involving 9.4 million beneficiaries.  AR 529; 22.

B.  Current EOSS Contract with OST

OST currently serves as the contractor for the EOSS.  OST received a one-year

contract with four one-year options in June 2017.  AR 22, 137.  The base year contract is

set to conclude on July 13, 2018.  AR 137.  OST's contract was procured under the

National Institute of Health Information Technology Acquisition Assessment Center

("NITAAC") CIO-SP3 GWAC.  *Id.*

During the performance of the contract, the government has maintained that OST

has "fail[ed] to perform, primarily because they grossly failed to accurately estimate the

workload and subsequent manning required to perform EOSS services."[2]  *Id.*  The

government concluded that the "task order is terminal and performance cannot be

---

[2] This opinion was originally filed under seal. On June 27, 2018, plaintiff requested redactions of certain information concerning the agency's evaluation of its performance as the incumbent contractor that it believes is source selection sensitive.  The United States Court of Appeals for the Federal Circuit has held that "a presumption of public access to judicial records" exists. *Baystate Techs., Inc. v. Bowers*, 283 F. App'x. 808, 810 (Fed. Cir. 2008)(citation omitted). The court is not persuaded that the agency's evaluation of OST would unfairly prejudice OST or that the information would give competitors an unfair advantage in a manner that would rebut the presumption of public access to court records.  Additionally, this court has on several previous occasions declined to redact past performance information from public opinions.  *See Synergy Sols., Inc. v. United States*, 133 Fed. Cl. 716, 727 n.5 (2017); *AM Gen., LLC v. United States*, 115 Fed. Cl. 653, 660 n.1 (2014); *Akal Sec., Inc. v. United States*, 87 Fed. Cl. 311, 314 n.1 (2009).  Therefore, the court will not redact the information requested by the plaintiff.

recovered.  The second option year will not be exercised and performance will end on

[July 13, 2018]."  AR 137, 138, 247.  The decision to not exercise the first option on the

OST contract left DHA with a continuing requirement to contract for services that help to

sustain the EOSS program.  AR 137.

 C.  Current Solicitation

 On February 21, 2018, Graham Ininns, Chief, Contract Resource Management,

Program Manager, DHA E-Commerce Systems issued a memorandum to obtain approval

to "solicit the assistance of GSA [General Services Administration] to acquire a new

[EOSS] contract utilizing the [Alliant GWAC]" for a one-year contract with four one-

year option years.  AR 15.  In his memoranda, Mr. Ininns noted that the current

contractor, OST, was exhibiting severe performance issues and that "[i]t is crucial that a

replacement contract is put into place to preserve the ability to provide support to manage

and operate the healthcare contracts as well as process the millions of healthcare claims

that come in daily."  *Id.*  In conjunction with Mr. Ininns' memoranda, Todd Young,

Contracting Officer ("CO"), issued a determination and findings ("D&F") regarding the

best procurement approach for the EOSS program contract.  AR 22-24.  The D&F noted

that DHA contemplated awarding a contract that would include a one-year base period

and four one-year options.  AR 22.  Additionally, the D&F explained that "[t]he

requirement is within the scope of GSA's Alliant program, and use of the Alliant

program conforms with DHA policy for Information Technology acquisitions (DHA

Component Acquisition Executive Memo: SUBJECT: Procurement of Health

Information Technology Product and Services)."  AR 23.

The policy cited by both Mr. Innins and Mr. Young was issued on June 6, 2016 and states in part "[i]f a service can be acquired by using GSA's Alliant GWAC or Alliant Small Business GWAC, then one of those vehicles shall be used to procure the service." AR 1.  Although Mr. Innin's memoranda and the D&F initially sought approval for the agency to obtain services through a GSA-assisted acquisition, in early March 2018, DHA appointed its own CO to oversee the procurement.  AR 15, 22-23; AR 7 (noting appointment and initial market research); AR 9 (forwarding initiating documents to CO Kimberlymae Wood).  Ms. Wood, who was appointed to be the CO for DHA, is located in a separate office from the individuals at DHA who were responsible for administrating OST's contract.  AR 609.

On March 20, 2018, Ms. Wood submitted an Acquisition Strategy for the EOSS program which was subsequently approved on March 30, 2018.  AR 136.  In her Acquisition Strategy, CO Wood noted under the Acquisition Requirement Section that OST "is failing to perform, primarily because they grossly failed to accurately estimate the workload and subsequent manning required to perform EOSS services."  AR 137.  The Acquisition Strategy also noted that CO Wood conducted market research to identify potential GWACs that could be used as the contract vehicle for the procurement.  AR 140.  Under the section entitled Market Research, the Strategy document stated that "[a]fter identifying the potential vehicles for the acquisition, it was determined the GSA Alliant Small Business GWAC was closely aligned with the requirements of this acquisition.  There are (12) twelve small businesses on Alliant's small business GWAC which appear capable of performing the work."  *Id.*  CO Wood further explained in a

response to an inquiry from a third party company, that as the CO, she had "determined that the GSA GWAC Alliant SB, to be the most advantageous method of procurement." AR 236.

The agency posted the draft/preliminary request for proposals ("RFP") on March 21, 2018.  AR 143, 146.  After a number of Alliant GWAC small business contractors elected to opt-in to the procurement, the agency finalized the RFP and posted the solicitation on April 16, 2018, with a proposal submission date of May 11, 2018.  AR 261.  In the end, the RFP sought offers for a one-year firm fixed price level of effort ("FFLOE") contract valued at under $10 million.  AR 263, 287.

OST filed the present action together with its motion for a preliminary injunction on May 10, 2018 challenging the decision to procure IT services through the Alliant GWAC. Following the status conference on May 14, 2018, a schedule was set to resolve the preliminary injunction motion.  The government filed the administrative record on May 21, 2018, and its partial motion to dismiss and response to the motion for a preliminary injunction on May 24, 2018.  OST filed its motion to supplement the administrative record on June 4, 2018.  Briefing was complete on June 12, 2018, and oral argument was held on June 18, 2018.

## II.    Legal Standards:

### A.  Motion to Dismiss

Because the government has moved to dismiss portions of plaintiff's case on jurisdictional grounds, the court will need to first decide whether it can consider all of OST's claims. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95

(1998).  This threshold inquiry requirement applies before the court can consider a request for preliminary relief.  *U.S. Ass'n of Importers of Textiles & Apparel v. US Dep't of Commerce*, 413 F.3d 1344, 1348 (Fed. Cir. 2005).  When "considering a motion to dismiss for lack of subject matter jurisdiction pursuant to [RCFC] 12(b)(1), as with a motion to dismiss pursuant to [RCFC] 12(b)(6), the court must accept as true all undisputed allegations of fact made by the non-moving party and draw all reasonable inferences from those facts in the non-moving party's favor."  *Westlands Water Dist. v. United States*, 109 Fed. Cl. 177, 190 (2013).

Because plaintiff has brought this action under the court's bid protest jurisdiction, the court must ensure that the plaintiff is an interested party and that OST's claims concern "objecti[ons]to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract [based on an] alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1).

B.  Supplementation of the Administrative Record

Generally, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."  *Camp v. Pitts*, 411 U.S. 138, 142 (1973).  In the context of bid protests, the Federal Circuit stated that  "[t]he purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the 'arbitrary and capricious' standard into effectively de novo review.'"  *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009) (quoting *Murakami v. United States*, 46 Fed. Cl. 731,

735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005)).   Specifically, "supplementation of the record should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'" *Id.*

Supplementation of the administrative record is allowed when a protestor alleges bad faith or bias and the administrative record is not sufficient to prove or disprove the allegation.  *Pitney Bowes Gov't Sols., Inc. v. United States*, 93 Fed. Cl. 327, 332 (2010). A protestor may not rely, however, on "innuendo or suspicion" alone to support a request to supplement the administrative record.  Rather, the protester must identify some "hard facts" before the court will allow the protestor to supplement the record with evidence of bad faith.  *Orion Int'l Techs. v. United States*, 60 Fed. Cl. 338, 344 (2004) (*citing CACI, Inc.-Fed. v. United States*, 719 F.2d 1567, 1579-82 (Fed. Cir. 1983)); *see also Office Depot, Inc. v. United States*, 94 Fed. Cl. 294, 298 (2010).

C.  Preliminary Injunction

The standards applicable to granting a preliminary injunction in a bid protest are well settled.  In deciding whether an injunction should be issued, a court considers: (1) whether . . . the plaintiff [is likely to] succeed[] on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief."  *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004).

In order to show that it is likely to succeed on the merits of its bid protest, OST must demonstrate that it will likely succeed in establishing that DHA's decisions were

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *PAI Corp. v. United States*, 614 F.3d 1347, 1351 (Fed. Cir. 2010) (quoting *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005); *see also* 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706(2)(A).  "Procurement decisions are subject to a 'highly deferential rational basis review.'"  *PAI Corp.*, 614 F.3d at 1351 (quoting *CHE Consulting, Inc. v. United States*, 552 F.3d 1351, 1354 (Fed. Cir. 2008)).  "Applying this highly deferential standard, the court must sustain an agency action unless the action does not 'evince[] rational reasoning and consideration of relevant factors.'"  *Id.* (quoting *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000)); *see also Axiom*, 564 F.3d at 1381 (Fed. Cir. 2009).  A court may set aside an agency's decision only if "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Axiom,* 564 F.3d. at 1381.  Further, agency decision-making is entitled to a "presumption of regularity." *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1085 (Fed. Cir. 2001) (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415 (1971)).  This court presumes that government officials act in good faith and requires "well-nigh irrefragable proof" before abandoning that presumption. *Croman Corp. v. United States*, 724 F.3d 1357, 1364 (Fed. Cir. 2013) (citation omitted).

## III.    Discussion

   A. The Court Has Jurisdiction Only over OST's Bid Protest Claim Regarding the Selection of the Alliant GWAC as the Contracting Vehicle

The government argues that this court should dismiss the portion of OST's complaint that can be fairly construed as protesting DHA's decision not to exercise its option under OST's existing contract.  The government maintains that to the extent OST claims the decision to go forward with the pending solicitation was improper because DHA wrongfully decided to not exercise OST's option in bad faith, OST's claim involves only a matter of contract administration.  The government argues that the Federal Circuit and this court have recognized that allegations concerning failure to exercise an incumbent contractor's option, even when in the guise of a bid protest, are always considered allegations involving contract administration which can exclusively be resolved through the processes established in the CDA.  Specifically, the government relies on the Federal Circuit's decision in *Coast Prof'l, Inc. v. United States, Fin. Mgmt. Sys., Inc.*, 828 F.3d 1349 (Fed. Cir. 2016), and this court's decision in *Gov't Tech. Servs. LLC v. United States*, 90 Fed. Cl. 522 (2009) to support its contention that challenges to options are only addressable through the procedures established under the CDA.  In *Coast Prof'l Inc*, the Federal Circuit reviewed a challenge brought by bid protestors to the proposed issuance of an award-term extension to competitors' contracts.  828 F.3d at 1349.  When analyzing the protestors' claim, the Federal Circuit held that "[i]f a contractor wishes to contest an agency's decision regarding exercising an option under the contract, such a challenge is a matter of contract administration governed by the CDA."  *Id*. at 1355 (citing *Jones Automation, Inc. v. United States*, 92 Fed. Cl. 368, 371-72 (2010); *Gov't Tech. Servs.*, 90 Fed. Cl. at 526).  In *Gov't Tech Servs.*, this court was faced with an incumbent contractor challenging the decision by the government to not

exercise an option in its contract. *Gov't Tech. Servs*, 90 Fed. Cl. at 522. The court held

that "the government's failure to exercise an option on an existing contract[]" is not

within the definition of "in connection with a procurement" as explained in *Distributed*

*Solutions v. United States*, 539 F.3d 1340, 1346 (Fed. Cir. 2008). *Id*. at 527. As such, the

court in *Gov't Tech. Servs.* determined that it did not have bid protest jurisdiction over

the protestor's allegations concerning the decision by the government not to exercise an

option on the protestor's contract. *Id.* at 531. In this case, the government explains that it

is not challenging this court's ability to hear OST's challenge concerning DHA's decision

to use the Alliant GWAC, but rather is only arguing that OST's allegation concerning

DHA's decision to not exercise OST's option and instead issue a competitive

procurement for IT services is not properly before this court under its bid protest

jurisdiction.

In response, OST argues that it is not challenging the agency's decision to not

exercise an option but rather the agency's decision to solicit services OST could have

provided under its contract. During oral argument, OST made clear that whether DHA's

decision to solicit for IT services was lawful depends on whether DHA's decision not to

exercise its option with OST was made in good faith. OST's argument relies mainly on

the Federal Circuit's decision in *Distributed Sols.*, which OST maintains adopted a broad

understanding of what actions are "in connection with a procurement." In *Distributed*

*Sols.*, the Federal Circuit held that issuance of a Request for Information ("RFI") which

resulted in an agency decision to not issue a competitive procurement was an action in

connection with a procurement or proposed procurement and could be challenged under

this court's bid protest jurisdiction. *Distributed Sols.*, 539 F.3d at 1340. The Federal Circuit held that the phrase "'in connection with a procurement or proposed procurement,' by definition involves [an action in] connection with any stage of the federal contracting acquisition process, including 'the process for determining a need for property or services.'" *Id*. at 1346. OST argues that its challenge to DHA's decision to solicit IT services without first justifying the need for those services when there is an available option was a decision made "in connection with a procurement" and thus falls within this court's bid protest jurisdiction.

For the reasons that follow, the court agrees with the government that OST's bid protest challenge to DHA's decision not to exercise its option must be dismissed and disagrees with OST. The court finds that the government is correct that OST's claim may only be heard in accordance with the procedures established under the CDA. In *Coast Prof'l, Inc.*, the Federal Circuit made clear that any challenge to a decision to not exercise an option is a matter of contract administration and only addressable through a CDA claim. *Coast Prof'l, Inc.*, 828 F.3d at 1355 ("If a contractor wishes to contest an agency's decision regarding exercising an option under the contract, such a challenge is a matter of contract administration governed by the CDA."). This reasoning is further supported by several GAO decisions that held that an agency decision not to exercise an option is a matter of contract administration that may only be heard under the CDA and is not a grounds for a bid protest. Thus, in *Xperts, Inc.*, the GAO dismissed a bid protest by an incumbent challenging an agency decision to procure goods under a new contract when, like the plaintiff in this case, the incumbent argued the failure to exercise the option was

made in bad faith.  B-244761, B-244761.2, 91 CPD ¶ 215, 1991 WL 182385 (Comp.

Gen. Sept. 6, 1991).  The GAO explained that challenges to the exercise of an option are

matters of contract administration and cannot be a basis for a bid protest even where there

are allegations of bad faith.  *Id.* at *1.  In *Walmac, Inc.*, the GAO dismissed a protest

where the incumbent contractor challenged the decision of the Air Force to issue a

request for proposal rather than exercise the next option on the protestor's contract for the

services.  *Walmac, Inc.*, B-244741, 931-2 CPD ¶ 358, 1991 WL 228879 (Comp. Gen.

Oct. 22, 1991).  The GAO held that it "will not consider an incumbent contractor's

allegation that an option should be exercised under an existing contract, since the

decision whether to exercise the option is a matter of contract administration outside the

scope of our bid protest function." *Id.* at *1.

The court also finds that OST's reliance on *Distributed Sols.* is misplaced.  In

*Distributed Sols.*, two contractors where challenging a decision by the government not to

proceed with a request for quotation, but rather to expand the scope of another contract to

meet the government's needs.  *Distributed Sols.*, 539 F.3d at 1340.  The Federal Circuit

recognized that the decision not to competitively procure goods was a decision that could

be challenged as a bid protest.  *Id.*  In this case, the agency has decided to competitively

procure services and OST is arguing that it should not be seeking to procure those

services because it could have provided those services under the option contract.  Thus, in

contrast to *Distributed Sols.* where the protestors wanted to force a competitive

procurement, OST in this case is seeking to stop a competitive procurement in order to

preserve its contract.  In this context, OST is not seeking to ensure that the agency uses a

Case 1:18-cv-00670-NBF   Document 30   Filed 07/11/18   Page 16 of 24

proper procurement vehicle to obtain services, but is interested only in protecting its own contract rights. Thus, this case is plainly different from *Distributed Sols*. Importantly, the government does not dispute that this court can consider DHA's decision to seek IT services using the Alliant GWAC vehicle and is not seeking to dismiss OST's objections to use of the Alliant GWAC vehicle, which OST argues was selected in bad faith. The government is only challenging OST's protest as it relates to DHA's decision not to exercise its option.

Therefore, the court agrees with the government that to the extent plaintiff believes the decision not to exercise the option on its contract was made in bad faith, OST's exclusive remedy is provided for under the CDA. This court cannot consider OST's challenge to DHA's decision to not exercise its option under its bid protest jurisdiction. However, this court does have bid protest jurisdiction over OST's claim that the selection of the Alliant GWAC was made in bad faith in order to harm OST.

B.  OST's Motion to Supplement the Administrative Record

Because, as discussed above, the court will only consider OST's claims regarding DHA's decision to use the Alliant GWAC, it has reviewed OST's motion to supplement the administrative record only to the extent it relates to DHA's selection of the Alliant GWAC. OST seeks to supplement the administrative record with evidence it claims will show that DHA's decision to use the Alliant GWAC was made solely to harm OST because OST was not eligible to compete under the Alliant GWAC. In support of OST's contention that the Alliant GWAC was chosen as the contract vehicle in bad faith, OST points to an email exchange in the record between James Berns, Chief, Contracting

16

Office Aurora, and CO Wood.  AR 131-33.  OST relies on Mr. Berns' statement that because OST's contract does not have the "extension of Services Clause in it," there will be a "greater need for a protest proof order (<$10M)."  AR 133.  Additionally, OST points to statements in the email exchange that indicate that Mr. Berns and CO Wood knew that OST could not bid on a solicitation issued under the Alliant GWAC.  AR 132.  OST maintains that this email exchange contains sufficient "hard facts" to justify supplementation of the administrative record with documents and depositions to allow OST to prove that DHA made the Alliant GWAC decision in bad faith.

OST seeks to supplement the record with numerous documents from its current contract file, which it claims prove that DHA has treated OST unfairly and early on decided to remove OST from continuing to provide IT services even though OST was not at fault.  Compl., Ex. A-P, Mot. to Supp., Ex. Q.  OST has also included the declaration from Bradley H. Stein ("Stein Declaration"), Mot. to Supp., Ex. R, in which Mr. Stein, the current Vice President of OST, summarizes the exhibits concerning DHA's conduct during the administration of OST's contract and DHA's alleged hostility toward OST.  In his declaration, Mr. Stein also states that OST would be an offeror for the pending work "had it not been improperly prevented from submitting a proposal by DHA's use of the Alliant GWAC."  Stein Dec. at ¶ 14.  OST also seeks to depose Graham Ininns, Kelly Theil, and Todd Young, three DHA officials involved in the administration of OST's contract.  OST has not sought to depose Ms. Wood, the CO for the Alliant GWAC procurement or Mr. Bern, the author of the above-cited email.  Finally, OST has moved to supplement the administrative record with any additional documents relevant to

DHA's decision to use the Alliant GWAC that have not yet been produced, with a memorandum referenced in the DHA's policy requiring use of the Alliant GWAC, and with portions of certain redacted emails that the government argues contain attorney client privileged information.

The government objects to OST's motion to supplement the administrative record. First, the government contends that the record is complete with regard to the decision to use the Alliant GWAC for this procurement under DHA's policy and that the policy cited within DHA's policy was not referenced or relied upon in DHA's decision. Next, the government argues that OST's motion to supplement is focused almost exclusively on issues related to contract administration that are not relevant to the protest and thus the motion to supplement should be denied.

The court agrees with the government. As discussed above, in *Axiom*, the Federal Circuit made clear that, unless necessary for judicial review, the court should not supplement the administrative record. *Axiom*, 564 F.3d at 1380. There are cases that support supplementation of the record in order to support allegations of bad faith or bias by government contract officials. *See, e.g.*, *Pitney Bowes*, 93 Fed. Cl. at 332-33. However, those cases make plain that to prevail on a supplementation motion based on concerns of bad faith, the protestor must establish that the necessary strong showing of bad faith or bias had an evidentiary foundation and does not rest on counsel's argument, suspicion, or conjecture. *Id.* In *Pitney Bowes*, the allegations of bias were founded on a personal relationship between an evaluation panel member and a subcontractor of the awardee with additional allegations of spoliation of evidence involving ratings by evaluation panel

members.  *Id*. at 329-30.  In another case, *L-3 Commc'ns,* there was evidence that an original source selection official was removed so that another could be substituted in order to change ratings to bolster the selection decision.  *L-3 Commc'ns Integrated Sys., L.P. v. United States,* 91 Fed. Cl. 347, 356 (2010), amended on reconsideration in part, 98 Fed. Cl. 45 (2011).  Where, however, an agency has presented findings to support its decision there has to be a strong showing of bad faith or improper behavior before supplementation is proper.  *Office Depot*, 94 Fed. Cl. at 298.

Here, the court finds that OST has not shown sufficient "hard facts" to warrant supplementation of the record with regard to the decision to use the Alliant GWAC.  The record shows that the decision to use the Alliant GWAC was mandated by DHA policy and that Ms. Wood, the CO responsible for making the final decision to use the Alliant GWAC, was not involved with the OST contract.  The government argues that in such circumstance the email chain on which OST relies does not reflect bad faith or bias aimed at harming OST.  Rather, because OST's base contract did not have an extension provision, the email reflects the need to try and make the solicitation bid protest proof.  In this case, Mr. Berns suggested that the solicitation seek services below the threshold for protests before the GAO, which has an automatic stay.[3]

---

[3] While ordinarily protests may be brought before this court or the GAO, a special rule applies to DOD contracts challenged before the GAO whereby contracts under $10 million and now $25 million can only be heard in this court where there is not an automatic stay of the procurement because GAO cannot exercise jurisdiction. If a pre-award bid protest was filed before the GAO triggers an automatic stay until the GAO resolves the bid protest.  31 U.S.C. § 3553(c).

The court does not read this email to mean that the decision to select the Alliant GWAC was done because of bad faith or bias against OST.  Granted, DHA anticipated OST might protest, in addition to others, and sought to limit where protests could be heard.  This email may be reasonably read to conclude that Mr. Berns was concerned about the needs of the EOSS program and was not aiming at harming OST.  Indeed, OST has not sought to depose either Mr. Berns or Ms. Wood.  OST has not presented any other evidence to show bad faith or bias regarding the decision to use the Alliant GWAC. As such, plaintiff's motion to supplement is denied.

C.  OST Has Not Established a Right to a Preliminary Injunction

i.  OST is not likely to succeed on the merits of its case

OST argues that it is likely to prevail on its claim that the decision to use the Alliant GWAC was made for the sole purpose of harming OST and that there is no other justification for its use. OST relies principally on the following facts from the administrative record to support its position: (1) an email exchange dated March 16, 2018, between Mr. Berns and CO Wood, in which Mr. Berns states that OST's contract does not have the extension of Service Clause and thus "there will be a "greater need for a protest proof order (<$10M)" and (2) the fact that both CO Wood and Mr. Berns acknowledge that OST cannot compete under the Alliant GWAC.  AR at 132-33.[4]

---

[4] As noted, for procurements by the DoD, pursuant to 10 U.S.C. §2304c(e)(1)(B) "a protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order except for . . .  a protest of an order valued in excess of $25,000,000." *See also Erickson Helicopters, Inc.,* B-415176.3, B-415176.5, 2017 CPD ¶ 378. 2017 WL 60404696, (Comp. Gen. Dec. 11, 2017).  The threshold amount in order to be able to protest a DoD procurement was

In response, the government argues that OST is not likely to succeed on the merits. Specifically, the government argues that the use of the Alliant GWAC is mandated by DHA policy, which was referenced by DHA employees throughout the procurement process.  AR 1.  Specifically, as discussed at length in the administrative record, DHA policy (DHA Component Acquisition Executive Memo: SUBJECT: Procurement of Health Information Technology Products and Services) mandates for new and follow-on contracts involving the procurement of health information technology that "[i]f a service can be acquired by using the GSA's Alliant GWAC or Alliant Small Business GWAC, then one of these vehicles shall be used to procure the service."  *Id*.  The government points to the initial D&F that justified the need to issue the procurement where Todd Young stated that "[t]he requirement is within the scope of GSA's Alliant program, and use of the Alliant program conforms with DHA policy for information technology acquisitions[.]"  AR 23.  Additionally, the government points to numerous statements by CO Wood that she independently determined that the Alliant GWAC was the most advantageous method of procurement.  AR 140, 236.  For example, in her acquisition strategy CO Wood explained that "after identify[ing] the potential vehicles for this acquisition, it was determined the GSA Alliant Small Business GWAC was closely aligned with the requirements of the acquisition."  AR 140.

In light of the foregoing, the government maintains that OST has provided only conjecture as to the motives behind DHA employees' decision to procure IT services for

---

changed from $10,000,000 to $25,000,000 in the national Defense Authorization Act for Fiscal Year 2017.

the EOSS program through the Alliant GWAC.  Where, as here, the government has a

rational and valid explanation for its actions, the government contends the suggestion that

selection of the Alliant GWAC was made to harm OST falls far short of the "well-nigh

irrefragable proof" necessary to overcome this court's presumption that government

officials act in good faith.  Def.'s Mot. to Dismiss at 8 (citing *Croman Corp.* 724 F.3d at

1364).  The government argues that the email chain between Mr. Berns and CO Wood, in

light of DHA's policy to use the Alliant GWAC, is not evidence of an effort to

deliberately exclude OST from competing on the procurement because DHA policy

required that DHA use the Alliant GWAC.

The court agrees with the government that OST is not likely to succeed on the

merits of its claim that DHA's decision to procure IT services under the Alliant GWAC

was made in bad faith.  It appears that the government is correct that DHA policy

mandates that this procurement be made under the Alliant GWAC and thus the decision

to follow the policy was not made in bad faith.  If DHA had to follow a policy mandating

use of the Alliant GWAC it did not act out of bias against OST.

The email chain cited by OST to show bad faith and bias does not alter this

conclusion.  First, when examined in context, it is clear that Mr. Berns' statement

regarding the procurement being "protest proof" was referencing the fact that DHA

wanted to ensure that a stay was not issued because the OST contract cannot be extended,

and thus there was a real concern that there will be a lapse in essential IT services.  Thus,

the statement "protest proof" is not relevant to DHA's decision to use the Alliant GWAC

pursuant to DHA policy.  Second, any reference to OST's inability to compete under the

Alliant GWAC does not suggest that either CO Wood or Mr. Berns chose a contracting vehicle because it specifically excluded OST.  The fact that OST was not eligible to compete under the Alliant GWAC is not evidence of bad faith.  As the government mentioned at oral argument, there is nothing preventing OST from partnering with a business that can participate under the Alliant GWAC, and OST may even be an eligible business under the new Alliant GWAC and thus eligible for the next series of contracts. S*ee* Oral argument at 11:57:00 a.m.–11:58:17 a.m. (June 18, 2018).  OST did not counter this assertion by the government during oral argument.  *Id.*

For all of these reasons, the court finds that OST is not likely to succeed on the merits of its claim that the Alliant GWAC was selected as the contracting vehicle to provide IT services for the EOSS program solely in bad faith and with animus toward OST.

ii.   Balance of the Equities Does Not Favor a Preliminary Injunction

OST argues that it will suffer irreparable harm by virtue that it will lose the ability to compete for a contract for which it would have otherwise been able to compete and that it risks losing personnel if not given the opportunity to compete for the new IT services contract.  The types of harm alleged by OST are the types of harm endured by any incumbent contractor that stands a chance of losing a follow-on contract and by themselves have not been held to create irreparable harm.  *PGBA,* 60 Fed. Cl. at 221 ("reliance on the loss of its current employees as a basis for irreparable injury would require this Court to consider any incumbent contractor's loss of a successor contract to be irreparable harm.").

Moreover, the court is persuaded that the equities weigh in favor of the government, in any case.  The court understands, as stated throughout the administrative record, the EOSS program is critical to ensuring that DHA properly administers the TRICARE program to ensure the delivery of healthcare service to millions of service members, veterans, and their families.  *See* AR 15, 22.  The record also makes clear that if an injunction is issued, these vital services would be interrupted because there is no alternative vehicle for providing the necessary IT support.  Importantly, plaintiff's suggestion at oral argument that DHA could instead issue a sole source contract for the year covered by this procurement, or issue some other contract, proves the government's point that these services are essential and that the harm to the government would be irreparable.  *See* Oral argument at 12:09:00 p.m.–12:09:45 p.m. (June 18, 2018).  It further demonstrates that the public interest mandates that the IT services for the EOSS program continue uninterrupted.  *Id.*  In such circumstances, the equities clearly weigh against a preliminary injunction.

## CONCLUSION

For the reasons stated above, the government's partial motion to dismiss is **GRANTED**, OST's motion to supplement the administrative record is **DENIED,** and OST's motion for a preliminary injunction is **DENIED.**

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge