# In the United States Court of Federal Claims

No. 18-670C
(Filed: November 20, 2018)*
*Opinion originally filed under seal on November 15, 2018

|  |  |
|---|---|
| OST, INC., | ) |
| Plaintiff, | ) Bid Protest; Jurisdiction; Motion to Dismiss; Federal Acquisition Streamlining Act of 1994 (FASA), 10 U.S.C. § 4106(f)(1); Bad Faith. |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

*Thomas A. Coulter,* Richmond, VA, for plaintiff. *Nicole Hardin Brakstad*, Richmond, VA, of counsel.

*Joshua Kurland,* Civil Division, United States Department of Justice, Washington, D.C., with whom were *Chad A. Readler*, Acting Assistant Attorney General, *Robert E. Kirshman, Jr.*, Director, and *Allison Kidd-Miller*, Assistant Director, for defendant. *Whitney Michak*, Attorney Advisor, Office of General Counsel, Defense Health Agency, Aurora, Colorado, of counsel.

**OPINION**

**FIRESTONE**, *Senior Judge*

Pending before the court in this bid protest is plaintiff Optimal Solutions and Technologies, Inc.'s ("OST") motion for judgment on the administrative record together with the defendant's ("the government") motion to dismiss pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") and its cross-motion for judgment on the administrative record. At issue is the Defense Health Agency's

("DHA") decision to issue a task order under the General Service Administration's ("GSA") Alliant Government Wide Acquisition Contract ("Alliant GWAC") for IT services in connection with DHA's E-Commerce Operations Systems Support ("EOSS") program.  The EOSS allows DHA to process claims for its 9.4 million beneficiaries.  OST had been providing those IT services for DHA's EOSS under a different DHA contract vehicle, the Chief Information Officer-Solutions and Partners 3 ("CIO-SP3") GWAC.  OST's CIO-SP3 contract expired on July 13, 2018.  The contract, however, contained four option years which DHA elected not to exercise.

OST initially filed a motion for a preliminary injunction on May 10, 2018, arguing that DHA's decision to procure IT services through a task order under the Alliant GWAC contract vehicle rather than exercise an option under OST's contract was made in bad faith and was contrary to law.  (ECF No. 5).  The government filed a response and a partial motion to dismiss, addressing OST's claim in two parts.  First, the government argued that the portion of OST's claim concerning DHA's decision not to exercise OST's option needed to be dismissed because the claim had to be resolved under the procedures set forth in the Contract Disputes Act ("CDA"), 41 U.S.C. § 701 *et seq.*  Second, the government argued, with regard to OST's claim that DHA's decision to use the Alliant GWAC was made in bad faith, that DHA's decision to issue a task order under the Alliant GWAC was required under DHA's Procurement of Health Information Technology Products and Services policy ("DHA policy") and therefore had not been made in bad faith.  Under the DHA policy "if a service can be acquired by using GSA's

Alliant GWAC or Alliant Small Business GWAC, then those vehicles *shall* be used to procure the service." AR 1 (emphasis added).

On June 22, 2018, the court denied OST's motion for preliminary injunctive relief and granted the government's partial motion to dismiss. The court agreed with the government that decisions relating to the exercise of options are matters of contract administration governed by the CDA and outside this court's bid protest jurisdiction. The court also found that OST was not likely to succeed on the merits of its claim that DHA's decision to procure IT services under the Alliant GWAC was made in bad faith and was arbitrary and capricious. *See OST, Inc. v. United States*, 2018 WL 3373023 (Fed. Cl. July 11, 2018). Thereafter, DHA issued the subject task order under the Alliant GWAC contract.

In its pending motion for judgment on the administrative record filed on August 3, 2018, (ECF No. 34), OST contends that DHA's decision to use the Alliant GWAC was done purposefully to exclude OST from competing for IT services and thus was made in bad faith and was arbitrary and capricious. Specifically, OST argues that the DHA policy does not mandate the use of the Alliant GWAC to procure the IT services at issue in this case and that the administrative record shows that DHA officials specifically chose the Alliant GWAC to keep OST from competing for the subject IT services. OST is not eligible to compete for task orders under the Alliant GWAC because it is not a contractor authorized to bid under the Alliant GWAC.

The government argues in its motion to dismiss that this court lacks jurisdiction over OST's protest under the Federal Acquisition Streamlining Act of 1994 ("FASA") 41

U.S.C. § 4106(f) on the grounds that OST is challenging the issuance of a task order. Specifically, under FASA, 41 U.S.C. § 4106(f)(1) "[a] protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order except for-- (A) a protest on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued; or (B) a protest [involves] an order valued in excess of $10,000,000." The government maintains that because the Alliant GWAC task order does not exceed the scope of the Alliant GWAC and is not valued over $10,000,000, OST's protest must be dismissed. The government argues, in the alternative, that should the court conclude that it has jurisdiction over the protest, that OST's bad faith argument is not supported. The government contends that the decision to issue a task order under the Alliant GWAC was required by DHA's policy because the IT services needed are covered by that GWAC. The government argues that where, as here, the decision to issue a task order under the Alliant GWAC was mandatory because the needed services could be obtained through the Alliant GWAC, DHA had to use the Alliant GWAC and did not act in bad faith.

For the reasons discussed below, the court finds that it does not have jurisdiction over OST's bid protest challenging DHA's issuance of a task order under the Alliant GWAC and thus the government's motion to dismiss for lack of subject matter jurisdiction is **GRANTED**.[1]

---

[1] Although the court finds that OST's protest is outside this court's jurisdiction as a challenge to a task order, in the interest of judicial economy the court is also addressing the merits of plaintiff's arguments based on allegations of bad faith as the court indicated that it would when it denied plaintiff's motion for preliminary injunctive relief. As discussed *infra*, the court finds

I.      **Factual Background and Procedural History**[2]

    A.      **DHA's E-Commerce System**

TRICARE is the healthcare program of the United States Department of Defense ("DOD") which serves active duty and retired military personnel as well as their dependents. AR 503. DHA is responsible for the management and operation of the TIRCARE program to ensure that military health and private sector care services provide service to the beneficiaries. *Id.* As part of the TRICARE program, beneficiaries are able to obtain authorized care from civilian providers through Managed Care Support Contracts ("MCSCs") for which they are reimbursed. *Id.*

In order to support this function, DHA has implemented the DHA E-Commerce System ("ECS"), which provides an interface that supports MCSC payments and other connected business management needs. *Id.* The E-Commerce Operational Systems Support ("EOSS") program at issue in this bid protest provides the technical support staff for the ECS. *Id.* This includes the IT services needed to maintain, operate, and provide engineering and technical support for the ECS. *Id.* As set forth in the solicitation "DHA ECS applications support critical and time-sensitive financial and contract management

---

based on the administrative record that the plaintiff has not shown that DHA officials acted in bad faith when they chose to secure IT services using a task order under the Alliant GWAC. The court is not, however, entering judgment on the administrative record because jurisdiction is lacking.

[2] Many of the background facts were included in the court's earlier opinion denying preliminary injunctive relief and are summarized here. *See OST, Inc. v. United States*, 2018 WL 3373023 (Fed. Cl. July 11, 2018).

operations" and allow DHA to process almost 200 million claims annually for 9.4 million beneficiaries. AR 529, 22.

  **B. OST's Contract**

OST received a one-year contract with four one-year options in June 2017. AR 22, 137. The base year contract concluded on July 13, 2018. AR 137. OST's contract was procured under the National Institute of Health Information Technology Acquisition Assessment Center ("NITAAC") CIO-SP3 GWAC. *Id.* The Administrative Record indicates that DHA was not satisfied with OST's performance and had decided while OST was still performing under its CIO-SP3 contract that DHA would not exercise its option to extend OST's contract beyond the first year. AR 137, 138, 247.

  **C. The Solicitation**

On February 21, 2018, Graham Ininns, Chief, Contract Resource Management, Program Manager, DHA E-Commerce Systems issued a memorandum to obtain approval to "solicit the assistance of GSA [General Services Administration] to acquire a new [EOSS] contract utilizing the [Alliant GWAC]" for a one-year contract with four one-year option years. AR 15. In his memorandum, Mr. Ininns noted that the current contractor, OST, was not performing well under its contract and that because of OST's poor performance "[i]t is crucial that a replacement contract is put into place to preserve the ability to provide support to manage and operate the healthcare contracts as well as process the millions of healthcare claims that come in daily." *Id.* In conjunction with Mr. Ininns' memorandum to GSA, Todd Young, DHA's Contracting Officer ("CO") on the OST contract, issued a determination and findings ("D&F") regarding the best

procurement approach for the EOSS program contract.  AR 22-24.  In the D&F, DHA indicated that it would be looking to award a new contract that would include a one-year base period and four one-year options.  AR 22.  The D&F stated that "[t]he requirement is within the scope of GSA's Alliant program, and use of the Alliant program conforms with DHA policy for Information Technology acquisitions (DHA Component Acquisition Executive Memo: SUBJECT: Procurement of Health Information Technology Product and Services)."  AR 23.  As noted, the DHA policy cited in the D&F states, "[i]f a service can be acquired by using GSA's Alliant GWAC or Alliant Small Business GWAC, then one of those vehicles shall be used to procure the service."  AR 1.  Although Mr. Innins and Mr. Young initially hoped to secure the needed IT services by having GSA conduct the procurement, GSA declined to conduct the procurement, whereupon in early March 2018, DHA appointed its own CO, Kimberlymae Wood, to oversee a DHA procurement under the Alliant GWAC.  AR 7, 9, 15, 22-23.  CO Wood was located in a separate physical office from the individuals at DHA who were responsible for administrating OST's contract.  AR 609.

  On March 20, 2018, CO Wood submitted an Acquisition Strategy for the IT services needed which was approved by James D. Berns, Chief, Contracting Operations Division-Aurora, on March 30, 2018.  AR 136.  In her Acquisition Strategy, CO Wood noted under the Acquisition Requirement Section that OST "is failing to perform, primarily because they grossly failed to accurately estimate the workload and subsequent manning required to perform EOSS services."  AR 137.  In the Acquisition Strategy, CO Wood also explained that market research was performed to identify potential GWACs

that could be used as the contract vehicle for the procurement. AR 140. Under the section entitled Market Research, the Strategy document stated that "[a]fter identifying the potential vehicles for the acquisition, it was determined the GSA Alliant Small Business GWAC was closely aligned with the requirements of this acquisition. There are (12) twelve small businesses on Alliant's small business GWAC which appear capable of performing the work." *Id.* CO Wood further explained in a response to an inquiry from an outside vendor, that as the CO, she had "determined that the GSA GWAC Alliant SB, to be the most advantageous method of procurement." AR 236.

DHA posted the draft/preliminary request for proposals ("RFP") for the task order under the Alliant GWAC on March 21, 2018. AR 143, 146. The RFP and the instructions to offerors explained that the acquisition was being conducted in accordance with FAR 16.505. AR 148, 285. After a number of Alliant GWAC small business contractors elected to opt-in to the procurement, DHA finalized the RFP and posted the solicitation on April 16, 2018, with a proposal submission date of May 11, 2018. AR 261. In the end, the RFP sought offers for a one-year firm fixed price level of effort ("FFLOE") contract valued at under $10 million. AR 263, 287.[3]

---

[3] The decision to issue an RFP for only a one year task order was done in order to keep the price of the proposed task order under the $10,000,000 threshold so that it would not be subject to a challenge so that DHA would be able to issue a new task order before the expiration of OST's contract to ensure continuity of service. *See* AR 132-133. OST contends that the decision to issue an RFP for only one year is evidence of bad faith on the grounds that the one-year decision was to keep OST from protesting the task order. Pl.'s Mot. at 14, 29. The government disputes this contention and argues that the one-year task order was designed to keep the EOSS system operational. The merits of these contentions is discussed infra.

8

### D. Procedural History

As discussed at the outset, OST filed its complaint with this court on May 10, 2018 challenging DHA's decision not to exercise its option under OST's contract but instead to issue a request for proposals under the Alliant GWAC. On that same day OST moved for a temporary restraining order and preliminary injunction. (ECF No. 5). As also discussed above, the court granted the government's partial motion to dismiss in part holding that OST's challenge to DHA's failure to exercise one of the options on OST's contract was not cognizable under this court's bid protest jurisdiction and had to be resolved under the procedures set forth in the CDA. *OST, Inc. v. United States*, 2018 WL 3373023 (Fed. Cl. July 11, 2018). Additionally, the court denied OST's motion for a temporary restraining order and preliminary injunction, holding that OST was not likely to succeed on the merits of its claim that the decision to use the Alliant GWAC was made in bad faith. *Id.* The court also determined that the balance of hardship and public interest weighed against preliminary injunctive relief. *Id.*

Thereafter the Alliant GWAC task order was issued. OST moved for judgment on the administrative record on August 3, 2018. (ECF No. 34). The government moved to dismiss OST's case and cross-moved for judgment on the administrative record. (ECF No. 37). The court held oral argument on November 8, 2018.

## II. DISCUSSION

### A. The Court Does Not Have Jurisdiction Over DHA's Decision To Obtain IT Services Using A Task Order Under The Alliant GWAC

The United States Court of Federal Claims has "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal Agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statue or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). However, the court's bid protest jurisdiction is not unlimited and under FASA, 41 U.S.C. § 4106(f)(1), this court does not have jurisdiction to hear protests "in connection with the issuance or proposed issuance of a task order, except for (A) a protest on the grounds that the order increases the scope, period, or maximum value of the contract under which the order is issued; or (B) a protest of an order valued in excess of $10,000,000." 41 U.S.C. § 4106(f)(1). The limits of this court's jurisdiction based on FASA have been explained by the United States Court of Appeals for the Federal Circuit as follows: "[T]he statutory language of FASA is clear and gives the court no room to exercise jurisdiction over claims made 'in connection with the issuance or proposed issuance of a task or delivery order.'" *SRA Int'l, Inc. v. United States*, 766 F.3d 1409, 1413 (Fed. Cir. 2014) (quoting 10 U.S.C. § 2304c(e)) (acknowledging that "this statute is somewhat unusual in that it effectively eliminates all judicial review for protests made in connection with a procurement designated as a task order").

Whether this court has jurisdiction to hear OST's protest turns on whether it is barred by FASA. The government argues that OST's bid protest is barred by FASA because OST's challenge is inextricably tied to DHA's decision to procure IT services using a task order under the Alliant GWAC. The government argues that this result is compelled by the Federal Circuit's decision in *SRA Int'l, Inc.*. In *SRA Int'l, Inc.* the protestor challenged the GSA's issuance of an Organizational Conflict of Interest ("OCI") waiver after the agency had awarded a different task order under the Alliant GWAC. *Id.* at 1411. The Federal Circuit held that the Court of Federal Claims erred in exercising jurisdiction over SRA's claims because SRA's protest of an OCI waiver was made in connection with the issuance of a task order under the Alliant GWAC. *Id.* at 1413-14.

The government argues that the Federal Circuit's decision in *SRA Int'l, Inc* mandates that OST's case be dismissed because OST's objection to DHA's action hinges on DHA's decision to issue a task order. The government contends that a challenge to issuance of a task order on the grounds that a specific task order was selected because the protestor was not eligible to compete is still a challenge to the issuance of a task order and thus falls within the FASA ban. In support, the government relies on *Mori Associates, Inc. v. United States,* 113 Fed. Cl. 33 (2013), in which a protestor also challenged an agency decision to issue a task order on the grounds that the specific task order was selected in order to keep the incumbent from competing. In *Mori* the court held that it did not have jurisdiction to hear the case under FASA. In dismissing the protest for lack of jurisdiction, the *Mori* court held that FASA does not bar a protest

involving task orders when there is no causal relationship between the alleged protest and the issuance of a task order. However, "when a protest challenges the decision to obtain services by requesting proposals from ... task order contract holders, the FASA prohibition on protests clearly applies." *Id.* at 38. Here, the government argues, OST is challenging the issuance of a specific type of task order and thus FASA applies.

OST argues that this court should exercise jurisdiction because OST is challenging the DHA's allegedly "bad faith" decision to find a contract vehicle designed to keep OST from competing. OST contends that DHA's decision to find that contract vehicle is distinct from the proposed issuance of a task order under the Alliant GWAC. Pl.'s Resp. to Mot. to Dismiss at 4. According to OST, DHA's decision to issue the task order under the Alliant GWAC "is a mere consequence of the improper procurement decision at issue[,]" i.e. the decision to exclude OST from the competition. *Id.*

In support of its argument, OST relies on this court's decisions in *BayFirst Solution, LLC v. United States*, 104 Fed. Cl. 493 (2012) and *McAfee, Inc. v. United States*, 111 Fed. Cl. 696 (2013). In *BayFirst*, the protestor was challenging the cancellation of a solicitation as well as the issuance of a task order. 104 Fed. Cl. at 499. The court in *BayFirst*, held that the FASA jurisdictional bar did not apply to the agency's decision to cancel a solicitation. *Id.* at 507-08. Specifically, the court held that although the cancellation of the solicitation and issuance of the task order were temporally connected, the cancellation of the solicitation can be viewed as "a discrete procurement decision and thus could have been the subject of a separate protest." *Id.* at 507. In *McAfee*, the court also found that FASA did not bar a protest on the grounds that the

protestor was challenging the agency's threshold decision to standardize a security network and not the issuance of a task order. 111 Fed. Cl. at 709-10. The court found that the decision to standardize the security network was a separate decision from the decision to issue the task order and thus was not in connection with a task order. *Id*. OST argues that the distinctions made in *BayFirst* and *McAfee* should be applied to OST's bid protest. Specifically, OST maintains that the DHA's decision to exclude OST from competing for the follow-on contract is a distinct decision that is separate from the decision to issue a task order for IT services under the Alliant GWAC. OST further argues that *Mori* is distinguishable from the pending case because in *Mori* the agency was making a decision between issuing a task order under two different contacts and thus this court would not have had jurisdiction under FASA to hear a challenge to issuance of a task order under the contract the protestor wanted in any event.

      The court has considered the parties' arguments and agrees with the government that it does not have jurisdiction to hear OST's bid protest because of the jurisdictional limitations set in FASA. The Federal Circuit in *SRA Int., Inc.* recognized that "[t]he statutory language of FASA is clear and gives the court no room to exercise jurisdiction," except for situations not applicable here, so that it "effectively eliminates all judicial review for protests made in connection with a procurement designated as a task order." 766 F.3d at 1413. Although OST contends that DHA made a decision to exclude OST from competing for follow-on IT services separate from DHA's decision to issue a task order under the Alliant GWAC, this view is not supported by the record. The record shows that DHA made a decision not to exercise the option on OST's contract and to find

another contract vehicle. The record does not show that DHA made then another decision to keep OST out of any future competition. Rather, the record shows that the DHA examined its options and determined that because the Alliant GWAC could meet its needs, DHA policy required that the Alliant GWAC be used. OST's ineligibility to compete is tied directly to DHA's decision to issue a task order under the Alliant GWAC. For this reason, the court finds that the present case is virtually identical to *Mori*. There, the court found that FASA deprived the court of jurisdiction to hear the bid protest because a challenge to issuance of a task order using a contracting vehicle under which the protestor could not compete was in fact a challenge in connection with a task order. *Mori*, 113 Fed. Cl. at 38. The court finds the same reasoning applies here.

In addition, this court finds that this case is very different from both *Bayside* and *McAfee* on which OST relies. In both of those cases the court found that at least portions of the protestor's bid protest were within this court's jurisdiction because they were plainly separate from the decision to issue a task order. Specifically, in *Bayside* the court held that it had jurisdiction over the protestor's allegations concerning the improper cancellation of a solicitation for services that were eventually procured using a task order. 104 Fed. Cl. at 507. Here the only discrete prior decision by DHA, as noted above, was DHA's decision not to exercise its option under OST's expired contract. That decision, however, only can be considered under the CDA and is not now before the court. There was no separate decision to keep OST from competing. OST's inability to compete was a consequence of DHA's decision to issue a task order under the Alliant GWAC. Similarly, unlike the protestor in *McAfee*, OST is not challenging the underlying decision

14

to acquire IT services or the type of IT services to be acquired which is "not tied to any single solicitation or delivery order[.]"  111 Fed. Cl. at 696.  Rather, OST is challenging the task order DHA selected on the grounds that OST cannot compete under that task order.  OST's protest is thus clearly in connection with the issuance of a specific task order.  In such circumstances, FASA bars OST's bid protest.

> **B.  Plaintiff Cannot Establish that DHA Officials Acted in Bad Faith by Selecting the Alliant GWAC**

As discussed above, although the court finds that it does not have jurisdiction to hear OST's bid protest due to the jurisdictional bar in FASA, the court finds that even if it could rule on the merits of OST's bad faith claim, OST would still not prevail.  OST argues that the government's reliance on the "Procurement of Health Information Technology Products and Services", policy to show that DHA had to use the Alliant GWAC is unsupported.  According to OST,  the "primary objective of [the above-cited policy] is to provide the DHA ECS (E-Commerce System) with IT support services" which is not the same as the acquisition of health information technology.  OST argues further that DHA has used other contracts for IT health-related services including the CIO-SP3 GWAC.  In support of its argument, OST has attached to its motion for judgment on the administrative record the RFP for another procurement that OST maintains is for similar services to those at issue in this case but was issued by DHA under the CIO-SP3 GWAC for the "Defense Health Agency (DHA), Health Information Technology, Solution Delivery Division (SDD), and Clinical Support Branch for the [Nutrition Management Information System and Special Needs Program Management

15

Information Systems]." Pl.'s Mot., Ex. 1 at 1. OST also argues that DHA's CO Wood did not specifically reference a "mandatory" policy requiring the use of the Alliant GWAC contracting vehicle when she selected the Alliant GWAC. OST contends that there would have been no reason for CO Wood to conduct "market research" to determine the most appropriate contracting vehicle for IT services if DHA had to use the Alliant GWAC as a matter of policy. Finally, OST argues that DHA's decision to keep the procurement under $10,000,000 was done intentionally to keep OST from challenging the procurement under FASA. According to OST, it is for these basic reasons that the only plausible explanation for DHA's decision to use the Alliant GWAC was to harm OST by keeping it from competing for DHA's IT needs.

In response, the government argues that none of these arguments undermines the presumption of good faith that attaches to government decision-making. Def.'s Mot. to Dismiss at 22. First, the government explains that the record makes clear that if the Alliant GWAC can be used to secure the needed IT services for DHA that DHA must then use the Alliant GWAC to obtain the IT services. The government states that the plain language of the "Procurement of Health Information Technology Products and Services" policy mandates the use of the Alliant GWAC as the procurement vehicle for procuring the IT services at issue in this bid protest. Specifically, the government cites the portion of the policy that states that "DHA contracting officer *shall* comply with the following policy when procuring HIT products and services" and that "[i]f a *service* can be acquired by using GSA's Alliant GWAC or Alliant Small Business GWAC, then one of those vehicles *shall* be used to procure the service." AR 1 (emphasis added.). The

16

government argues that the solicitation makes clear that it is procuring health IT services which are covered by the policy in question. Specifically, the government argues that the RFP's performance work statement explains how the procurement seeks "IT service to maintain, operate, and provide engineering and technical support for the DHA ECS program" and that those IT services include the "administration and maintenance of existing DHCA ECS custom software[.]" AR 501. Therefore, the government maintains that the procurement at issue clearly falls within the scope of the "Procurement of Health Information Technology Products and Services" policy and that once CO Wood confirmed that there were contractors capable of providing the needed services under the Alliant Small Business GWAC the DHA had to use that contract vehicle. In such circumstances the government contends OST has not shown how the procurement decision, consistent with a mandatory policy, was made in bad faith.

  Second, the government argues that OST's reliance on the RFP attached to its motion is misplaced because it is not part of the administrative record. Furthermore, the government argues that even if the court were to consider the RFP attached to its memorandum, the RFP is not for a DHA procurement and thus it is irrelevant to the issue before the court. The government explains that the RFP referenced by OST was issued for a procurement issued by the U.S. Army Medical Research Acquisition Activity ("USAMRAA") at Fort Detrick, Maryland to fulfill a DHA requirement and thus DHA's procurement policies did not directly apply.

  Third, with regard to OST's claim that CO Wood's "market survey," proves the Alliant GWAC was not mandated, the government explains that CO Wood conducted her

market research in accordance with the subject DHA policy to ensure that there were a sufficient number of Alliant Small Business GWAC vendors able to compete for the procurement pursuant to the policy.  *See* AR 116, 129, 135, 140, 239, 637-42.  Finally, the government argues that DHA's decision to keep the Alliant GWAC under $10,000,000 was not done to harm OST but to ensure that DHA was able to change service providers without any interruption of services and thus DHA designed the procurement to fit within FASA's jurisdictional bar.

The court agrees with the government that OST's arguments that the DHA policy did not mandate the use of the Alliant GWAC and thus the decision to procure the needed services through the Alliant GWAC was made in bad faith to harm OST is without support.  Bad faith must be established with "well-nigh irrefragable poof" according to the Federal Circuit with evidence to show a "'specific intent to injure the plaintiff.'"  *Am–Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1240 (Fed. Cir. 2002) (citation omitted).  Here, OST has not met its burden.  Indeed, it has not presented any hard facts that would support further investigation into DHA's actions.  To begin, the court finds that DHA's policy does mandate the use of the Alliant GWAC where there are vendors to meet DHA's needs.  In addition, the court finds that the DHA reasonably concluded that its policy applied to the services at issue in this case.  By its terms it states: "[if] a service can be acquired by using GSA's Alliant GWAC or the Alliant Small Business GWAC, the one of those vehicles shall be used to procure the service."  AR 1.  The services involved in this acquisition are "IT service[s] to maintain, operate, and provide engineering and technical support for the DHA ECS program."  AR 501.  OST's

attempt to parse the language of the policy and the RFP is unconvincing.  Thus the IT services provided for under Alliant GWAC clearly encompass the health information technology services needed by DHA to service its 9.4 million users.  In this connection, the court further finds that OST's reliance on the RFP attached to its memoranda is not properly before the court and irrelevant in any case.  OST has not moved to supplement the administrative record.  Moreover, the RFP concerns a proposal issued and administered by a different agency and not DHA.  As such, the RFP OST relies on has no bearing on this case.

      Further, the court agrees with the government that CO Wood's "market survey" was not inconsistent with the DHA policy or use of the Alliant GWAC.  CO Wood needed to confirm that the Alliant GWAC could meet DHA's needs.  The court also finds that CO Woods did in fact rely on the DHA policy in making her final decision to use the Alliant GWAC.  *See* AR 23, 236.  Finally, the court agrees with the government that DHA's decision to keep the task order to less than $10,000,000 and thus within FASA's bid protest limitation does not evince bad faith toward OST but is consistent with DHA's claim that it needed to change service providers without interruption.

      Given the record in this case, OST has failed to overcome the presumption of good faith attached to government decision-making.  OST has not produced any hard facts to show that DHA's decision to use the Alliant GWAC to obtain the needed IT services was made for the sole purpose of harming OST and not to fulfill its legitimate need for IT services.  To the contrary, the record establishes that DHA had a legitimate government reason for using the Alliant GWAC to meet its IT needs.

## CONCLUSION

For the reasons stated above, the government's motion to dismiss is **GRANTED**, OST's motion for judgment on the administrative record and the government's cross-motion for judgment on the administrative record are denied as **MOOT.** The Clerk is directed to enter judgment accordingly. No costs.

**IT IS SO ORDERED.**

s/Nancy B. Firestone<br>
NANCY B. FIRESTONE<br>
Senior Judge